*FILED ELECTRONICALLY*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| JOHN NORMAN, as Administrator of the Estate of DESMAN LADUKE, deceased, | NO. 5:22-CV-00300-KKC-MAS |
| PLAINTIFF | |
| v. | PLAINTIFF'S MOTION TO ALTER OR AMEND |
| JOSEPH HORTON, individually, et al. | |
| DEFENDANTS | |

## PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

Comes now the Plaintiff, John Norman as Administrator of the Estate of Desman LaDuke, by counsel, for his Motion to Alter or Amend the Court's Opinion and Order entered on the 16th of May 2025 (DE 80, Opinion and Order). This Motion centers solely on the Court's evaluation and dismissal of the Plaintiff's state law claims against Defendants Horton and Fraddosio. (DE 80 at 21-24). Pursuant to Fed. R. Civ. P. 59(e), a party may file a motion such as this one to "correct manifest errors of law or fact or to present newly discovered evidence." *Ruscavage v. Zuratt*, 831 F. Supp. 417, 418 (E.D. Pa. 1993) (citations omitted). Plaintiff recognizes that such motions under Fed. R. Civ. P. 59(e) are to be used sparingly. *Id*. However, Plaintiff respectfully submits that there is a manifest error of fact underlying the Court's Opinion and Order—specifically the Court seems to adopt the Defendants' assertion that Plaintiff raised new arguments with regard to the state law claims predicated on alleged violations of the diminished capacity policy for the first time at the summary judgment stage. (DE 74 Defendants' Reply at 6-7; DE 80 at 23). This assertion is simply

not supported by the record, including evidence contained in deposition testimony and Defendants' own expert disclosures.

The judgment entered against the Plaintiff was predicated upon this mistake of fact, as well as the Defendants' unsupported assertion of surprise and, therefore, prejudice. To correct this mistake, Plaintiff cites to evidence contained in sworn depositions and expert reports that demonstrates the Defendants' extensive knowledge of Plaintiff's state law claims based on the diminished capacity policy.

## Standard for Relief under Rule 59(e)

As the court correctly highlighted in its Opinion, "the federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage." *Colonial Refrigerated Transportation, Inc. v. Worsham*, 705 F.2d 821 (6th Cir. 1983). It must be determined "whether the change in argument made by a party would cause a 'shift in the thrust of the case' that would prejudice the other party." *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Michigan*, 619 F. Supp. 3d 773, 780 (E.D. Mich. 2022) (quoting *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013)). In the present case, there is no change in argument: the theory behind the claims is well-established, and does not alter the thrust of the case in summary judgment arguments. The Defendants were familiar with the theory, conducted discovery, and are not faced with any undue prejudice that would warrant the Court disregarding this theory. A 59(e) motion to amend judgment may be granted if, among other reasons, there is a mistake of fact, or if there is a need to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

**Argument**

Contrary to Defendants' assertion that they have been unfairly surprised or prejudiced by the Plaintiff's theory of liability, they possessed extensive knowledge regarding not only the theory, but the evidence associated with it well before the summary judgment stage—indeed, numerous deponents from the Nicholasville Police Department reviewed the diminished capacity policy in preparation for their depositions, those same officers were questioned at length about the policy and violations thereof, Plaintiff disclosed expert opinions on the applicability of the diminished capacity policy to the Desman LaDuke encounter and Defendants' violation of that policy during the encounter, and Defendants retained an expert witness of their own who discussed the theory ad nauseum in his expert report as well as during deposition. Accordingly, Defendants' claims of surprise and prejudice are simply not supported by the record.

### I. Plaintiff's state law claims were not raised for the first time at summary judgment.

As discussed in the Court's Order and the briefing on summary judgment, Plaintiff's state law claims are primarily predicated on Defendants Horton and Fraddosio's failures to comply with Nicholasville Police Department's policy pertaining to interactions with diminished persons. The operative complaint contains numerous references to the diminished capacity policy and Defendants' failure to follow the policy. (DE 31, Second Amended Complaint at 4: ¶24-5: ¶26; 16: ¶¶138-42). These allegations were incorporated by reference into Count III asserting state law claims. (*Id.* at 19: ¶159).

The function of affirmative federal pleadings is to give an opposing party fair notice of the nature and grounds of an upcoming claim, as well as a general idea for the type of litigation involved. *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983). Here, the nature of the claims has not changed and the general type of litigation applicable to the

3

case also remains unchanged. While Plaintiff could have been more particular within Count III, the record reveals that Defendants were well-apprised of Plaintiff's argument that Defendants' failure to follow the diminished capacity policy serves as a basis for liability under Kentucky law.[1] A similar claim that is not outlined in specific detail in early pleadings is not outside the realm of possibilities for which an argument may be based (even during summary judgment arguments) and does not necessarily entail unfair surprise, so long as the underlying factual issue is identified. *United States SEC v. Sierra Brokerage Servs.*, 712 F.3d 321, 328 (6th Cir. 2013). The operative complaint identifies the factual issues of the applicability of the diminished capacity policy and whether that policy was followed, and those factual issues were litigated vigorously, as discussed below.

**II.      Plaintiff raised, and Defendants vigorously defended against, the state law claims throughout the course of litigation.**

The applicability of the persons of diminished capacity policy to the encounter with Desman LaDuke was discussed with nearly every Nicholasville Police Officer deposed, including (but not limited to) Defendant Joseph Horton (DE 55 at 80:13-21), Todd Sponcil (DE 50 at 76:7-12), Alexus Jones (DE 63 at 54:9-14), Sam Wade (DE 68 at 56:8-14), Jeremy Balltrip (DE 51 at 12:18-15:1) and Kyle Lamb (DE 66 at 8:20-9:3). Defendant Joseph Horton (among several others) was questioned at length regarding his understanding of, and training on, the diminished capacity policy. (DE 55 at 80:22-83:12). Potential violations of the diminished capacity policy were discussed with most of the Nicholasville Police officers throughout depositions, including (but not

---

[1] Plaintiff notes that the deadline to file a Motion to Amend the Complaint ran on November 15, 2023. (DE 26, Amended Scheduling Order). Depositions in this matter did not begin until January 2024, as much of the evidence in this case was not available until September 2023 because of a pending Kentucky State Police investigation regarding Defendant Horton. (*See* DE 28 Plaintiff's Motion for Status Conference (discussing timeline of the Kentucky State Police Investigation)).

4

limited to) Joseph Horton (DE 55 at 83:13-20), Todd Sponcil (DE 50 at 84:15-88:16), Alexus Jones (DE 63 at 59:1-22; 60:16-62:17), Sam Wade (DE 68 at 58:11-64:18), and Jeremy Balltrip (DE 51 at 131:21-132:2). The Defendants were so aware of the scrutiny that would come during depositions regarding the persons of diminished capacity policy and questions related to its applicability and violations thereof that Nicholasville Police Officers would review the policy (presumably at the direction of counsel) in preparation to testify. (DE 51 at 16:10-17:9 (Balltrip); DE 68 at 15:15-18 (Wade); DE 66 at 8:20-9:3 (Lamb); DE 63 at 9:15-20 (A. Jones)).

In light of the deposition testimony on this issue, both the Plaintiff and Defense experts spent considerable time addressing the applicability, appropriateness, and compliance with the diminished capacity policy. First, Plaintiff's expert witness on police practice, Thomas Tiderington, discussed these issues at length in his report. (DE 45-1, Expert Report of Thomas J. Tiderington at 22). The Defendants, likewise, retained a police expert named Brian S. Batterton. Mr. Batterton possesses substantial knowledge on policies put in place by police departments, such as the policy regarding persons of diminished capacity. (DE 46-1, Expert Report of Brian S. Batterton). In Mr. Batterton's report, he discusses the policy at issue:

> "63. A review of the Persons of Diminished Capacity policy showed that it was consistent with the recommendations, considerations and procedures recommended by professional organizations in the field of law enforcement such as PERF and the IACP."

(DE 46-1 at 40).

> "75. Therefore, it is my opinion that Lieutenant Fraddosio and the NPD SRT officers complied with the NPD Persons in Crisis Policy and generally accepted police practice regarding persons in crisis/ 'suicide by cop'".

(DE 46-1 at 47).

In his deposition, Mr. Batterton was questioned extensively regarding the Persons of Diminished Capacity policy, how it was used in his report, the compulsory nature of the policy, how it applied to the officers on the scene of the shooting at issue, and how Mr. LaDuke falls under the definition of a person of diminished capacity. The following are examples of the questioning of Mr. Batterton on these subjects:

> **"Q. … you list the Nicholasville Police Department policies, several of them, and basically say those policies were in accordance with generally accepted police practices and standards in the field of law enforcement.**
>
> A. Correct.
>
> …
>
> **Q. And the very first policy that you list is the persons of diminished capacity, correct?**
>
> A. Correct.
>
> **Q. Okay. You would agree with me that the persons of diminished capacity policy governed the conduct of the officers on scene at the LaDuke residence?**
>
> …
>
> **Q. To what extent did it not apply?**
>
> …
>
> **Q. … Where in this policy does it say this does not apply if a—if there is a firearm in the residence of the diminished—the person with diminished capacity for mental illness?"**
>
> …

(DE 64, Brian Batterton Depo. at p. 50-53).

> **"Q. When you said persons in crisis policy, are you referring to this, persons of diminished capacity/mentally ill?**
>
> A. Yes, sir.
>
> **Q. … And it's your testimony that the officers, including Lieutenant Fraddosio and the NPD SRT officers, complied with this policy? That's how I read your opinion, correct? Page 47, black and white, right there it says it, right?**
>
> A. Yes.
>
> **Q. Okay. I noticed, though, you went through and discussed several other policies and how they complied. I did not quite see as much about this, so I want to go through this policy with you and discuss exactly what you mean by compliance, okay?**
>
> A. Okay.

> **Q. All right. Obviously, you and I talked about this. I asked you earlier if this governed the conduct of officers on the scene. You kind of said, to some extent. I mean, obviously, it would not be important to your opinion if it didn't govern their conduct, correct?**
>
> A. Right.
>
> **Q. Okay. This document says that it's a general order; is that correct?**
>
> A. Yes."

(DE 64 at 67-68).

> "**Q. [ . . . ] you would agree—I think all the experts in this case agree that Desman LaDuke falls under this policy, correct, sir?**
>
> A. Yes."

(DE 64 at 70:8-12).

> "**Q. Would you agree with me that, if that happened, that would be a violation of this policy?**
>
> A. Well, of that provision."

(DE 64 at 72:9-11).

> "**Q. Okay. Can you cite for me one place in the record where there's any evidence that anyone ever evaluated whether or not they were compressing Desman LaDuke's comfort zone?**
>
> A. I don't know of any specific place in the record."

(DE 64 at 74:9-14).

Defendants' counsel, understanding that Plaintiff's strategy in using the diminished capacity policy to establish ministerial duties on the part of Defendants, went so far as to attempt to rehabilitate Defendants' expert during his deposition and examine Batterton about the use of the word "should" versus "shall" in the diminished capacity policy:

> "Q. [T]here's been testimony today about the Nicholasville Police Department's policies, and I just want to make sure this was cleared up. Would you agree, from your review of the policies, that, in particular the persons of diminished capacity and mentally ill policy, that policy has some different provisions? Some of those provisions use the word must or shall; is that correct?
>
> A: That's correct.

> Q: In your training and in your experience as a law enforcement officer, is there a difference in the meaning between should and shall?
>
> A: Yes. Like we discussed earlier, **shall is an imperative and doesn't leave anything open to discretion. And should is different. It – it does leave something open to discretion.** You'd – it's like, generally, you should do this. But there could be circumstances when you deviate."

(DE 64 at 137:1-137:19).

It was no accident that counsel for the Defendants specifically asked Batterton if the policies were "open to discretion". The Defendants not only were on notice of the state law claims, but they also actively defended these claims. Defendants' assertion that they are unfairly surprised by the Plaintiff's state law claims premised on violations of the diminished capacity policy is simply unsupported by the record.

### III. Defendants' claims of undue prejudice are not supported by the record.

Without surprise, there can be no prejudice. Given the extensive questioning of witnesses on the state law claims as well as statements from Defendants' retained expert (both in his report and during his deposition) addressing and defending against those claims, there can be no serious contention that Defendants have suffered any prejudice. The policy behind the preclusion of new theories or causes of action introduced during arguments for summary judgment focuses on unfairness to the "surprised" party. *Tucker*, 407 F.3d 784, 788. If an opposing party is faced with brand new theories (ergo, changing the "thrust" of the case), they would then be forced to retain new witnesses, perform new discovery, and most importantly, mount a new defense theory or strategy; the listed tasks are impossible to complete in a reasonable time and would cause undue burden to the Defendants in any case. In the present case, Defendants have already retained an expert witness, questioned Plaintiff's expert witness, and examined the policy at issue.

The Sixth Circuit has found that where a party takes proactive actions to file motions or affidavits which protect their interests, they may not claim unfair surprise. *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989). Likewise, because the Defendants' retained expert spends considerable energy in his report and through deposition defending against the precise theory at issue, Defendants should not be permitted to claim unfair surprise or prejudice. The Sixth Circuit has also established that where a party claims prejudice or unfair surprise yet devotes large portions of their brief to dismantling said claims, there is less support for an argument that allowing the claim to proceed would be unfairly prejudicial to that party. *Morse v. McWhorter*, 290 F.3d 795, 801 (6th Cir. 2002). The Defendants in this case devoted roughly *seven pages* of their response to attempts to dismantle the theory of liability which they claimed unfairly surprised and introduced undue prejudice. (DE 74 at 7-14). Because there is no prejudice to the Defendants, the Court should address Plaintiff's asserted theory of negligence.

**IV.  To allow the dismissal of the state claims would result in manifest injustice.**

No precise legal definition for manifest injustice exists, thus courts must handle cases involving potential manifest injustice on a case-by-case basis. *Drown v. GreenPoint Mortg. Funding, Inc. (In re Leahy)*, 376 B.R. 826, 834 (Bankr. S.D. Ohio 2007). It is understood that, to qualify as manifest injustice, there must exist a fundamental flaw in the original decision which would lead to an inequitable result which is not in line with applicable policy. *Int'l Union United v. Bunting Bearings Corp. (In re Bunting Bearings Corp.)*, 321 B.R. 420, 423 (Bankr. N.D. Ohio 2004). To succeed on the motion, the movant must demonstrate that the error is "direct, obvious, and observable". *Cusano v. Klein* (In re Cusano), 431 B.R. 726, 734 (B.A.P. 6th Cir. 2010) (citing *In re Henning*, 420 B.R. 773, 785 (Bankr. W.D. Tenn. 2009)). Furthermore, the movant must

demonstrate that the underlying judgment caused serious injustice which may be avoided if the judgment is reconsidered. *Id*.

As explained in detail in Plaintiff's response to the motion for summary judgment, Defendants' duties under the diminished capacity policy are ministerial and, therefore, Defendants are not entitled to immunity for their negligence in failing to comply with the Policy. (DE 70 at 16-20.) There is a jury issue as to whether Defendants negligently failed to comply with the ministerial diminished capacity policy. (*Id.*) To disregard and thereby dismiss with prejudice Plaintiff's state law claims because of an unfounded claim of unfair surprise with the facts established in the record would unquestionably result in manifest injustice.

**V. In the alternative, any dismissal of the state law claims should be without prejudice.**

The Court's Order holds that in "the operative complaint, the Estate bases its state law claims on the alleged excessive force utilized by the Defendants. (DE 31, Second Amended Complaint, at ¶¶ 155-69.)" (DE 80 at 21.) As noted above, the operative complaint contains numerous references to the Diminished Capacity Policy and Defendants failure to follow the Policy. (DE 31, Second Amended Complaint at 4: ¶24-5: ¶26; 16: ¶¶138-42). These allegations were incorporated by reference into Count III asserting state law claims. (*Id*. at 19: ¶159).

To the extent the Order holds that these allegations are not sufficient, the Court should extend the deadline for amendment of pleadings and Plaintiffs should be granted leave to file the attached Third Amended Complaint. (Ex. 1, Proposed Third Amended Complaint). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). If a complaint fails to meet the pleading requirements, dismissal should be "without prejudice and with leave to amend" unless it is clear "that the complaint could not be saved by

10

amendment." *Newberry v. Silverman*, 789 F.3d 636, 645-46 (6th Cir. 2015) (holding that District Court erred in dismissing complaint with prejudice).

In the alternative, given the undeniable viability of Plaintiff's state law claims regarding Defendants' failures to comply with the Diminished Capacity Policy, any dismissal should be without prejudice for lack of jurisdiction (because of the dismissal of Plaintiff's federal law claims), which would allow Plaintiff to re-file in state court. *See* KRS 413.270.[2]

**Conclusion and Requested Relief**

In light of the foregoing, Plaintiff respectfully requests that this Court amend its judgment to address Plaintiff's state law claims premised on alleged violations of the diminished capacity policy. Should the Court decline to amend its judgment to address these claims, Plaintiff requests leave of the Court to file the attached Third Amended Complaint to conform to the testimony and evidence.[3] In the alternative, Plaintiff requests that this Court amend its judgment to dismiss the state law claims *without prejudice* for lack of jurisdiction.

---

[2] KRS 413.270 ("Effect of judgment of no jurisdiction") provides:

> (1) If an action is commenced in due time and in good faith in any court of this state and the defendants or any of them make defense, and it is adjudged that the court has no jurisdiction of the action, the plaintiff or his representative may, within ninety (90) days from the time of that judgment, commence a new action in the proper court. The time between the commencement of the first and last action shall not be counted in applying any statute of limitation.
>
> (2) As used in this section, "court" means all courts, commissions, and boards which are judicial or quasi-judicial tribunals authorized by the Constitution or statutes of the Commonwealth of Kentucky or of the United States of America.

[3] Even if the Court finds the allegations contained in the Complaint to be deficient, it is well settled that the parties may constructively amend the complaint by agreeing, even implicitly, to litigate fully an issue not raised in the original pleadings. 6A. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1493 at 19 (2d ed. 1990). If amendments are permitted at trial, they most certainly should be permitted prior thereto especially when the parties have fully litigated the issue as is the case here.

11

Respectfully submitted,

/s/ Jonathan B. Fannin
Jonathan B. Fannin
*Counsel for plaintiff*

OF COUNSEL:

Matthew C. Minner, Esq.
Jonathan B. Fannin, Esq.
Carl W. Walter II, Esq.
Minner Vines Injury Lawyers, PLLC
325 West Main Street; Suite 210
Lexington, Kentucky 40507
Phone: 859-550-2900
Facsimile: 859-550-2902
Matt@mvmlaw.com
Jonathan@mvmlaw.com
Carl@mvmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed through the CM/ECT system, and a copy was served via electronic mail to the following on this the 12th day of June 2025 to:

L. Scott Miller, Esq.
J. Tyler Chelf, Esq.
L.S. Miller Law, PLLC
333 West Vine Street
Ste. 1720
Lexington, KY 40507
lsmiller@lsmlaw.com
tchelf@lsmlaw.com
*Counsel for Defendants*

*/s/ Jonathan B. Fannin*
Jonathan B. Fannin
*Counsel for Plaintiff*
